PEOPLE v. SAWICKI.

SAME v. MARTIN.

1. WITNESSES—SEQUESTRATION—DISCRETION OF COURT.
   Sequestration of witnesses during the jury trial of a person charged with a crime is discretionary with the court.

2. APPEAL AND ERROR—ABUSE OF DISCRETION—ELEMENTS.
   An abuse of discretion by a trial court in making a determination of fact requires the reviewing court to find that the result is so palpably and grossly violative of fact and logic, that it evi-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 53 Am Jur, Trial § 31.
[2] 5 Am Jur 2d, Appeal and Error § 774.
[4, 5] 20 Am Jur, Evidence § 1235 et seq.
[6, 7] 53 Am Jur, Trial §§ 618, 739–741.
[8] 21 Am Jur 2d, Criminal Law § 582.

dences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason, but rather of passion or bias.

3. WITNESSES—SEQUESTRATION—APPEAL AND ERROR—DISCRETION OF COURT.

Denial by trial court in jury trial for robbery armed of motion to sequester certain witnesses while certain other witnesses are testifying where the motion was not made until 7 witnesses had already testified, and witnesses sought to be sequestered were indorsed upon the information as prosecution witnesses *held*, not an abuse of discretion (CLS 1961, § 750.529).

4. CRIMINAL LAW—ACCOMPLICE—CREDIBILITY—CORROBORATION.

The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and a jury may convict on the uncorroborated testimony of an accomplice.

5. SAME—PROSECUTION WITNESSES—CREDIBILITY—DEFENSE COUNSEL.

Counsel for defendant in a criminal case must place before the jury all circumstances surrounding the prosecution witnesses upon the stand, as well as any fact which would have any reasonable tendency to affect their credibility.

6. WITNESSES—CREDIBILITY—INSTRUCTIONS TO JURY.

The trial judge is not required to comment in his instructions to the jury concerning a witness' interest, since it bears upon the jury's evaluation of credibility.

7. CRIMINAL LAW — INSTRUCTIONS — PROSECUTION WITNESS — CREDIBILITY.

Refusal of trial court to instruct jury that a prosecution witness, an alleged accomplice who had pled guilty to a lesser charge than robbery armed and who after 7 months had still not been sentenced, had an interest in the outcome of the trial, and that his testimony should be viewed with extreme caution and grave suspicion *held*, proper, as it is the jury's function to decide if a witness is interested and if the witness' interest has affected the credibility of his testimony, where the record discloses no evidence that the witnesses gave false testimony (CLS 1961, § 750.529).

8. SAME — EQUAL PROTECTION — CONSTITUTIONAL LAW — ARBITRARY STANDARD.

Defendants' claim in prosecution for armed robbery that they were denied equal protection of the law because, of the 4 alleged coperpetrators of the crime, two were convicted of robbery armed, a third was allowed to plead guilty to attempted robbery armed, and a fourth was not prosecuted at all *held*, to

have no merit, as there is no allegation that in the prosecution of the case the people exercised a policy of selectivity based upon an unjustifiable standard such as race, religion, or some other arbitrary classification (CLS 1961, § 750.529).

Appeals from Recorder's Court; Skillman (W. McKay), J. Submitted Division 1 April 6, 1966, at Detroit. (Docket Nos. 156, 157.) Decided October 11, 1966. Leave to appeal denied by Supreme Court to defendant Sawicki January 10, 1967, 378 Mich 747; denied to defendant Martin May 23, 1967, 379 Mich 762.

Chester A. Sawicki and Albert A. Martin were convicted of robbery armed. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Samuel H. Olsen,* Prosecuting Attorney, *Samuel J. Torina,* Chief Appellate Lawyer, and *Richard J. Padzieski,* Assistant Prosecuting Attorney, for the people.

*R. Patrick Donahue,* for defendants.

HOLBROOK, J. Defendants, Chester A. Sawicki and Albert A. Martin, were convicted of the crime of robbery armed* in the recorder's court for the city of Detroit, before a jury, September 13, 1963, and sentenced to prison for respective terms of 15 to 30 years and 7½ to 15 years, September 27, 1963.

Defendants have appealed from this conviction and raise the following questions for review:

1. Where the prosecution attempts to establish the whereabouts of the defendants on the night of the crime by two witnesses, should the trial court have excluded one of the witnesses from the courtroom while the other was testifying?

---

* CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

2. Where the only testimony allegedly placing defendants at the scene of the crime was given by an alleged accomplice, should the trial court have instructed the jury that such testimony should be viewed with extreme caution and grave suspicion?

3. Where the key witness for the prosecution in defendant's trial for robbery armed had already pled guilty to the charge of attempted robbery armed, but after seven months had not yet been sentenced, should the trial court have instructed the jury that such witness had an interest in the outcome of the trial?

4. Where an alleged accomplice names himself and three others as coperpetrators of the crime of robbery armed, is the constitutional requirement of equal protection violated by the fact that of the four alleged coperpetrators, two are convicted of robbery armed, the third is allowed to plead guilty to attempted robbery armed, and the fourth is not prosecuted at all?

The pertinent facts appear to be as follows: On December 28, 1962, Miss Elizabeth Bach, Miss Bertha Bach and Mr. Louis Bach lived at 21651 W. Seven Mile road in the city of Detroit. In response to a telephone call, approximately at 7:00 p.m., from an unknown party stating that there was a fire in the back yard, Mr. Louis Bach opened a side door of the house to investigate and was met by two, three, or possibly four men armed with a gun, who forcibly entered the residence.

Holding the Bach family at gunpoint, the assailants ransacked the house, taking a collection of early American coins valued at approximately $200 together with upwards of $30 in other cash.

The only witnesses to the crime were the three members of the Bach family. At the time of the trial, Mr. Louis Bach was deceased. Neither Eliza-

beth nor Bertha Bach was able to identify either
defendant Albert Martin or defendant Chester
Sawicki as the thieves who entered their house, be-
cause the robbers wore caps, gloves and face masks
made of a green material.

Since Mr. Louis Bach was deceased at the time
of trial, he could not identify certain old coins pro-
duced by the prosecution as being from his collec-
tion. The sisters, Elizabeth and Bertha Bach, were
not sufficiently familiar with their brother's coin
collection to be able to positively identify the coins
produced as being from the stolen collection.

It is the contention of the people that the crime
was committed by defendants Sawicki and Martin;
that one James Parker was their accomplice; and
that after completion of the robbery, Sawicki, Mar-
tin and Parker retired to the residence of one Ralph
McAfee to split the loot.

The only direct evidence placing the two defend-
ants at the scene of the crime was given by James
Parker who testified that the robbery was planned
and carried out by himself, Chester Sawicki, Albert
Martin and Ralph McAfee. Ralph McAfee denied
any participation in the robbery, but stated that on
the night of the crime he permitted the two defend-
ants and James Parker the use of his basement to
divide up a sack full of money, some of which con-
sisted of old coins. Although McAfee denied par-
ticipation in the robbery and any knowledge as to
where the money came from, he shared in the pro-
ceeds to the extent of $52.

The testimony of McAfee and Parker was the
only evidence placing defendant Sawicki in McAfee's
basement on the night of the crime. The only other
evidence placing defendant Martin in the basement
was his fingerprint on a Vernor's ginger ale bottle
found in the basement. Martin claims that the print

was placed on the bottle when he and Sawicki were in the building looking for an apartment some time before the night of the crime.

On January 17, 1963, James Parker was arraigned and at this time he entered a plea of not guilty. Subsequently, on February 1, 1963, he withdrew his plea of not guilty and, by leave of court, entered a plea of guilty to the reduced charge of attempted robbery armed.

Both Martin and Sawicki entered pleas of not guilty and stood trial together on the charge of robbery armed. Parker and McAfee were witnesses on behalf of the prosecution. When Parker was brought in to testify, counsel for defendant Martin made a motion to exclude other witnesses from the courtroom. The trial judge denied the motion because it was not made seasonably; Parker and McAfee were the eighth and ninth witnesses to testify.

James Parker, on September 30, 1963, was sentenced to a term of 3½ to 5 years on the charge of attempted robbery armed. Ralph McAfee has not been tried for any offense arising out of the incident.

The issue raised by appellants' first question is whether the trial judge abused his discretion in denying counsel for defendants' motion to exclude witness McAfee from the courtroom while witness Parker was on the witness stand. At the time of the motion, 7 prosecution witnesses had previously testified and Parker was being examined. No previous motion for sequestration had been made. The stated reason for the court's refusal of the motion was that 7 witnesses had already testified, and it would be unfair to grant the motion at such a late stage. The names of both Parker and McAfee were indorsed upon the information as prosecution witnesses, and defendants' counsel was charged with

the knowledge that they would be called to testify
as well as the other witnesses' names so indorsed.

As we said in *People* v. *Likely* (1966), 2 Mich App
458, on page 461: "The matter of sequestering of
witnesses is discretionary with the court. *People* v.
*Burns* (1887), 67 Mich 537; *People* v. *Martin* (1920),
210 Mich 139."

The term "discretion" is defined in the case of
*Spalding* v. *Spalding* (1959), 355 Mich 382, wherein
Mr. Justice Talbot Smith stated on pp 384, 385, as
follows:

"The term discretion itself involves the idea of
choice, of an exercise of the will, of a determination
made between competing considerations. In order
to have an 'abuse' in reaching such determination,
the result must be so palpably and grossly violative
of fact and logic that it evidences not the exercise of
will but perversity of will, not the exercise of judg-
ment but defiance thereof, not the exercise of reason
but rather of passion or bias."

We conclude that the trial judge did not abuse his
discretion in denying the late motion for sequester-
ing of witnesses.

The issues raised by the second and third ques-
tions, *i.e.,* credibility of the testimony of an accom-
plice, can be dealt with together.

Should the trial judge have instructed the jury
that the testimony of the alleged accomplice, Parker,
should be viewed with extra caution and grave sus-
picion?

Judge Skillman charged the jury in part as fol-
lows:

"Now in connection with the credibility of wit-
nesses, there has [*sic*] been several witnesses here,
a number of whom who said that they had a previous
criminal record and there were some witnesses
whom we call *particeps criminis. Particeps criminis*

is just a simple Latin term which means parties to the crime and when a witness testified in the case who is *particeps criminis* or a party to the crime you should examine his testimony carefully and with caution and particularly if it is corroborated by any other fact or circumstances. A person who is *particeps criminis* or participates in a crime has a perfectly legal right to testify in a case but the weight to be given to his testimony is a question of fact for the jury, as I say, as I said to you a moment ago in determining the credibility of such a witness you should ask yourselves, you must ask yourself whether or not what he testified to is corroborated to by any other fact or circumstances in this particular case. You should check and look into and scrutinize his testimony very carefully to see what motive, if any, he has for testifying. * * *

"Now in considering the testimony of the witnesses, you should ask yourself if there has been any reward or inducement offered to anyone to testify in any particular manner. In other words, if he has any reason or purpose in testifying other than a desire to tell the truth."

The comparatively recent case of *People* v. *Zesk* (1944), 309 Mich 129, appears to be analogous to the case at hand. Therein the sole witness against defendant was the accomplice Kozakiewiecz. The defendant's defense to the charge of murder was an alibi, and he produced 9 witnesses, who claimed he was elsewhere than the scene of the crime at the time of the murder. The jury chose to believe the accomplice and returned with a verdict of guilty. On appeal defendant claimed error in the trial judge's failure to direct the jury to look with suspicion upon the testimony of the accomplice, a self-confessed murderer. In affirming the conviction, the Supreme Court quoted from 1 Gillespie, Michigan Criminal Law & Procedure, § 379 as follows:

"The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and it is well settled that a jury may convict on such testimony alone, and it is not error for the court to refuse to charge that it is not safe to convict a defendant, on the uncorroborated testimony of an accomplice."

Also, see, *People* v. *Wallin* (1885), 55 Mich 497; *People* v. *Dumas* (1910), 161 Mich 45; and *People* v. *McCrea* (1942), 303 Mich 213.

In a criminal case it is not only proper but it is the duty of counsel for defendant to place before the jury all circumstances surrounding the people's witness upon the stand, as well as any fact which would have any reasonable tendency to affect their credibility. It is the function of the jury to decide first if the witness is interested, and second if the witness' interest has affected the credibility of his testimony. The trial judge is not required to comment in his instruction concerning a witness' interest since it bears upon the question of credibility which is reserved to the jury. *People* v. *Hare* (1885), 57 Mich 505; *People* v. *Simard* (1946), 314 Mich 624.

Appellants cite the case of *Napue* v. *Illinois* (1959), 360 US 264 (79 S Ct 1173, 3 L ed 2d 1217), in support of their contention that the trial judge should have instructed the jury that Parker had an interest in the outcome of the trial. The *Napue Case, supra,* however, is distinguishable in that therein, in response to a question by the prosecuting attorney, the accomplice stated that he had received no promise of consideration in return for his testimony. The prosecuting attorney knew at the time that this answer was false but made no effort to correct it. The Supreme Court upon appeal reversed the conviction because it was obtained through false testimony known to be such by the prosecuting attorney which violated the due process

clause of the Fourteenth Amendment. In the instant case, the record is barren of any evidence that McAfee or Parker gave false testimony, and therefore the *Napue Case, supra,* is not applicable.

In the case at hand, defense counsel was not restricted in bringing out the facts surrounding all the circumstances of the alleged accomplice including the facts of his prosecution, and that he had not been sentenced at the time of trial even though his plea of guilty had been accepted some 7 months previously. The instructions given were sufficient and proper and there was no error committed by the court as claimed in appellants' second and third questions.

Appellants in their final question claim that the Federal constitutional requirement of equal protection was violated in this case by reason that, of the 4 alleged coperpetrators of the crime, two were convicted of robbery armed, the third was allowed to plead guilty to attempted robbery armed, and the fourth was not prosecuted at all.

The case of *Oyler* v. *Boles* (1962), 368 US 448 (82 S Ct 501, 7 L ed 2d 446) is determinative of this issue. Therein, petitioners, sentenced by a West Virginia court under the habitual criminal statute, claimed they had been denied equal protection of the laws under the Fourteenth Amendment of the Federal Constitution because the statute had only been applied to a small minority of those subject to its provisions. The United States Supreme Court held that there was no infringement of the constitutional right because it was not alleged that in enforcing the statute West Virginia exercised a policy of selectivity based on an unjustifiable standard such as race, religion, or some other arbitrary classification.

Similarly, because there is no such allegation in the instant case, the claimed denial of equal protec-

tion of the laws under the Fourteenth Amendment lacks merit. See, also, *Yick Wo* v. *Hopkins* (1886), 118 US 356 (6 S Ct 1064, 30 L ed 220).

We conclude that appellants had a fair trial, and that no prejudicial error was committed. Affirmed.

J. H. GILLIS, P. J., and McGREGOR, J., concurred.