PEOPLE v NETTLES

1. CONSPIRACY—ROBBERY—WITNESSES—REWARD FOR TESTIMONY—CREDIBILITY.

The jury, as trier of the facts, was entitled to know that defendant's coconspirators, in exchange for their testimony against defendant, had the charges against them reduced from armed robbery to larceny in a building, thus affecting their credibility as witnesses against defendant; the prosecutor's suppression of this information from the jury denied defendant a fair trial.

2. CONSPIRACY—ROBBERY—WITNESSES—REWARD FOR TESTIMONY—SUPPRESSION OF INFORMATION.

A prosecutor cannot, by his silence, effectively suppress from the jury the fact that a defendant's coconspirators are testifying against the defendant in exchange for reduced charges against them where the credibility of the coconspirators is an important issue because the defendant has denied on the witness stand that he ever plotted to perpetrate the crime charged and contended that he was forced at knife point to drive a getaway car for the coconspirators.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 February 8, 1972, at Lansing. (Docket No. 11620.) Decided May 30, 1972.

William Nettles was convicted of armed robbery and conspiracy to commit armed robbery. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 16 Am Jur 2d, Conspiracy § 41.

*Arthur J. Tarnow,* State Appellate Defender, for defendant.

Before: McGREGOR, P. J., and LEVIN and TARGONSKI,* JJ.

TARGONSKI, J. Defendant was sentenced to a term of life imprisonment on each count of armed robbery, MCLA 750.529; MSA 28.797 and conspiracy to commit armed robbery, MCLA 750.157a; MSA 28.354(1), after conviction following a jury trial concluded on March 17, 1971. This appeal was taken as of right following sentence by the trial court.

At trial, Alan McNamara testified that on September 10, 1970, he and four other men were watching television at the home of one Charles Ludorf residing at 722 Lyndon Avenue in the City of Flint. There was a knock at the door at approximately 9 p.m. and two men entered; one of them held a "rifle-shotgun". These men were subsequently identified as Ralph Brown and Walter Kimble. They asked McNamara and his companions to surrender their money and the request was complied with. Brown and Kimble then rambled through the house, picking up a tape recorder, a ring, a knife and a polaroid camera. Brown and Kimble fled after forcing McNamara and his companions to remove their trousers.

Both Kimble and Brown testified in the trial below. Before Walter Kimble testified the following colloquy took place in the absence of the jury:

*"Mr. Bekofske [counsel for Kimble]:* * * * . Mr. Talkow [attorney for defendant at trial] has raised a point that perhaps should be on the record and that is the

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

substance of the agreement that has been reached, and
I am perfectly willing to pose it at this point for Mr.
Talkow's elucidation as well as for the court.

"*The Court:* I don't see anything wrong with that.

"*Mr. Bekofske:* The prosecutor has agreed to reduce
any and all charges arising out of this transaction in
regard to Mr. Kimble and Mr. Brown to that charge
known as larceny from a building, providing they tes-
tify and tell the whole truth in this proceeding against
Mr. Nettles; that is the sum and substance of the
agreement.

"*The Court:* Is that right so far as you know, Mr.
Marroso?

"*Mr. Marroso [assistant prosecutor]:* That is correct,
your Honor."

Kimble then went on to testify that he and Brown
had entered the aforementioned dwelling and had
committed the robbery in question; Brown had
been carrying the shotgun. According to his testi-
mony Brown, the defendant Nettles and he had
decided and plotted to commit the robbery when
they were at the Nettles' home at approximately 5
p.m. on the same day. This testimony continued to
indicate that Nettles drove his car to the Lyndon
Street address and waited on a nearby street while
Kimble and Brown were in the house. They re-
turned to the car after the robbery, and the de-
fendant drove them away from the scene of the
crime. As they were driving away from the scene,
they spotted a police car which followed them for
some distance down Pierson Road to Industrial
Road at which point allegedly Nettles made a
sharp turn to lose the police. When Nettles turned
his car into the driveway of Kimble's aunt's home,
the police pulled up into the next driveway and
got out. Kimble's testimony was basically corrobo-
rated by Ralph Brown when he took the stand.

One of the police officers in that scout car testi-

fied that he and his partner had followed the Nettles' car because it was proceeding "very slowly and quite suspiciously". The officer testified that the operator of the car had turned left on Industrial Avenue without signalling and that he then pulled the vehicle over. He then testified that he observed a camera, a tape recorder and a ring in the back seat of the automobile when he shined his light in that direction. Allegedly, he then inquired of the occupants of the car as to the ownership of those articles. They all denied ownership of any of the articles. Upon further inspection this officer found a knife on the front seat of the automobile near the passenger's door. While this was going on, another police cruiser arrived and its occupants reported the robbery at 722 Lyndon and described the assailants in a fashion resembling Brown and Kimble. Nettles, Brown and Kimble were all arrested on suspicion of armed robbery.

The defendant denied on the witness stand that he had ever plotted with Brown or Kimble to perpetrate the robbery. He contended that he had been forced at knife point to drive Brown and Kimble to the home of the latter's aunt and that he was unaware of what had transpired before that. Two issues are raised by the defendant on appeal. The first issue raised by the appellant is "whether the reward given co-conspirators for their testimony should have been properly brought out for the jury by the prosecution?" In light of our disposition of this issue, we will not mention nor discuss the second issue raised by the defendant since a discussion of such question would in our opinion not make any substantial contribution to the jurisprudence of this state.

It is conceded by the prosecutor in his brief on

appeal which was filed just ten days prior to the arguments on appeal, that the prosecutor did not bring out on his examination of either Kimble or Brown the facts relative to their plea-bargaining arrangement. Further, in that brief he concedes that these witnesses under cross-examination denied receiving any promise in exchange for their testimony even though Kimble came close to an admission when he said that his lawyer discussed the matter with him, although the lawyer told him that he "couldn't promise anything". Also, in the appellee's brief it is stated unequivocally that the police officer in charge of the case under cross-examination as to any "deal" made with Kimble responded that he had advised Kimble that he "didn't know, 'that's up to the prosecutor's office and his attorney'". He gave a similar response when questioned as to whether or not he had told Brown that a "deal" had been made for him. There is no question that the prosecutor and the trial judge must have been and were aware of the fact that these were not truly stated factual recitations; that in fact there was an arrangement because it was so stated on the record outside of the presence of the jury. This was known to everybody but the jury which was the "trier of the facts". Yet, under our law the "trier of the facts" is entitled to full information on matters pertaining to the credibility of witnesses, and in fact it is always argued by the prosecution and instructed by the court that the jury must consider the "bias or prejudice or interest in the outcome of the proceeding" on the part of the witnesses in determining their credibility. This fact is so well known, and because it is equally well known that the prosecutor has the obligation to protect the interests of all citizens, not merely to secure convictions, we see no need to extend the length of

this opinion by citation of numerous authorities. The difference between a possible maximum life sentence under the charge as originally placed against Kimble and Brown and the maximum four-year penalty which they faced under the reduced plea certainly would go to the issue of their interest in the outcome or their bias or prejudice and could weigh very heavily on the jury's evaluation as to their credibility as witnesses against the defendant Nettles.

The prosecutor contends in his brief that the fact that defense counsel was not precluded from cross-examining the witnesses Kimble and Brown with respect to any bargaining in exchange for their testimony that the issue of prejudice to the defendant was removed. It is obvious from the fact situation here that the jury did not have the complete story of the transactions affecting the outcome of this trial before it at the time that it deliberated.

It is the contention of the prosecution that this case is distinguishable from *People v Evans,* 30 Mich App 361 (1971), because in that case the trial court, over the defendant's objection, kept from the jury the fact that a codefendant had pled guilty to manslaughter which had been reduced from first-degree murder, the charge on which the defendant was tried and convicted. In that respect this case is distinguishable, but the facts never got to the jury because of the nature of the responses made by the prosecution's witnesses, not only those with whom they made their arrangement but also by the officer in charge of the case in a manner which appeared, regardless of its intent, to effectively keep from the jury the fact of the reduced plea arrangement with the two witnesses despite all of the efforts of the defense attorney to bring the same out before the jury.

It is also contended that the defendant is precluded from raising the issue on appeal since no request was made for corrective instruction. We fail to see the merit in this contention since it is a well established principle of law that instructions to the jury must be predicated upon the proofs as brought out during the course of trial. If there is no basis in the proofs to justify the instruction the instruction must not be given even when requested. *People v Hansen,* 368 Mich 344 (1962).

The prosecutor also contends that there is no statutory duty nor case law imposing such duty upon him to make an affirmative disclosure of the fact that he permitted perpetrators of the offense to plead to a substantially lesser charge in exchange for testimony against one who they claim acted as their getaway driver. The credibility of these two witnesses, Kimble and Brown, as well as that of the defendant is especially an important element at issue in this case where the defendant testified that he did not voluntarily participate but was forced to participate at knife-point by the two witnesses in question. We concede that our examination has not disclosed any case law specifically in point nor any statutory duty imposing such an obligation upon the prosecutor. However, we believe that there are circumstances where such duty should be obvious to the prosecutor because of his overall responsibilities to the public and the community. In *People v Jordan,* 23 Mich App 375, 387–388 (1970), the Court quoted favorably the language of Justice CHRISTIANCY from *Hurd v People,* 25 Mich 405 (1872), relative to the duties and obligations of the prosecutor. We believe that this quotation exactly a century ago is applicable here and sets forth the solemn obligations which the prosecutor takes upon himself in the trial of a

criminal case once he has assumed the duties of his office. For that reason we set forth this quotation as follows:

"The prosecutor in a criminal case, is not at liberty, like a plaintiff in a civil case, to select out a part of an entire transaction which makes against the defendant, and then, to put the defendant to the proof of the other part, *so long as it appears at all probable from the evidence, that there may be any other part of the transaction undisclosed; especially, if it appears to the court that the evidence of the other portion is attainable.* The only legitimate object of the prosecution is 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence.' The prosecuting officer represents the public interest, which never can be promoted by the conviction of the innocent. His object like that of the court, should be simply justice; he has no right to sacrifice this to any pride of professional success. And however strong may be his belief of the prisoner's guilt, he must remember that, though unfair means may happen to result in doing justice to the prisoner in the particular case, yet, justice so attained, is unjust and dangerous to the whole community." (Emphasis supplied.)

In the *Jordan* case, the Court was speaking about the obligations of the prosecutor merely because the prosecutor had failed to obtain certain evidence rather than having actively suppressed any evidence. The Court stated that was of no consequence. *People v Jordan, supra,* p 388. In this case the prosecutor by his silence effectively suppressed from the jury the fact of the arrangement with the witnesses Kimble and Brown which information would have been of considerable benefit to the jury in determining their credibility where credibility was such an important issue as in the instant case. There is no question that everyone in the courtroom except the triers of the facts, the jury, knew

of this arrangement. The defendant did not receive a fair trial.

Reversed and remanded.

All concurred.