PEOPLE v SMYERS

PEOPLE v TRANTHAM

1. INDICTMENT AND INFORMATION—JOINDER OF COUNTS—DISTINCT OF-
FENSES.

An examining magistrate could properly grant a prosecutor's
motion to permit the filing of an information alleging a single
conspiracy with two criminal objects (burglary and receiving or
aiding in the concealment of stolen property), where, although
each of the two counts charged a separate distinct offense, the
two offenses arose out of the same transaction (MCLA 750.110,
750.157a, 750.535).

2. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S BELIEF—
HARMLESS ERROR.

A prosecutor's statement to the jury that he believed the defend-
ant was guilty was, if error, necessarily harmless, where the
prosecutor's statement of belief was in response to a defense
argument, the prosecutor indicated immediately that he
wanted the jury to decide the case on the evidence, defendant's
trial counsel neither objected to the statement nor requested a
curative instruction, and the trial court specifically instructed
the jury to disregard any expression by counsel with respect to
their personal belief of defendant's guilt or innocence.

3. CRIMINAL LAW—EQUAL PROTECTION—CONSPIRACY—PROSECUTOR'S
DISCRETION.

A defendant's claim that he was denied the equal protection of
the law because he and two codefendants were the only parties
named in a 13-person conspiracy information who ultimately
received prison terms (where the others apparently pled guilty
or entered pleas of nolo contendere to charges of lesser offenses)

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur 2d, Indictments and Informations §§ 221–225.
[2, 7] 53 Am Jur, Trial § 637.
[3] 21 Am Jur 2d, Criminal Law §§ 514, 516.
[4] 53 Am Jur, Trial §§ 415–426.
[5, 6] 68 Am Jur 2d, Searches and Seizures §§ 61–66, 71, 72.
[8] 29 Am Jur 2d, Evidence § 324.

had no merit where it was not alleged that in the prosecution of the case the people exercised a policy of selectivity based upon an unjustifiable standard such as race, religion, or some other arbitrary classification, because a prosecuting attorney by the very nature of his duties is required to exercise discretion.

4. CRIMINAL LAW—DIRECTED VERDICT—QUESTION OF FACT.

A defendant was not entitled to a directed verdict of acquittal on the ground that he was an informer for the police during the period of time he had participated in a burglary conspiracy where the trial judge accurately perceived the issue as a question of fact because of substantial contradictions and conflicts in the testimony.

5. SEARCHES AND SEIZURES—WARRANT—PROBABLE CAUSE—REMOTENESS OF INFORMATION.

The test to determine whether facts in a supporting affidavit are too stale or remote to justify the issuance of a search warrant is a flexible and reasonable one depending on the facts and circumstances of the particular case in question.

6. SEARCHES AND SEIZURES—WARRANT—PROBABLE CAUSE—REMOTENESS OF INFORMATION.

The facts of an affidavit supporting the issuance of a search warrant were not too stale or remote to justify issuance where there was a six-day hiatus between the date that the affiant received personal knowledge that a stolen cocktail dress which would be later seized was in defendant's home and the date of issuance; the facts stated by affiant that the dress had been given to the defendant three months earlier and was worn by the defendant's wife justified the magistrate's finding of probable cause to believe the dress would be present at defendant's home for the reasonably foreseeable future.

7. CRIMINAL LAW—ARGUMENT OF COUNSEL—PROSECUTOR'S REMARKS—FAILURE TO OBJECT.

Remarks by the prosecutor in closing argument will not be considered on appeal in the absence of a timely objection by defendant at trial unless cautionary instructions would not have cured the prejudice resultant from the comments.

8. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—REBUTTAL—CREDIBILITY—DISCRETION.

Admission into evidence of a stolen adding machine taken from defendant's home pursuant to a valid search warrant after the conspiracy of which defendant was convicted was over did not constitute reversible error because the evidence was relevant

rebuttal to defendant's claim that all his actions were to conceal his role as an FBI informer and because defendant had testified he only concealed and sold stolen property which he told the FBI about; admission of this evidence was a matter of discretion on the issue of credibility.

Appeal from Genesee, Philip C. Elliott, J. Submitted Division 2 February 6, 1973, at Lansing. (Docket Nos. 14007, 9710.) Decided May 22, 1973. Leave to appeal as to Smyers applied for.

Archie W. Smyers, Robert Trantham, and 11 others were convicted of conspiring to break and enter occupied dwellings and conspiring to receive and conceal stolen property worth more than $100. Defendants Smyers and Trantham appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Robert F. Leonard,* Prosecuting Attorney, *Donald A. Kuebler,* Chief Assistant Prosecuting Attorney, and *Joel B. Saxe,* Assistant Prosecuting Attorney, for the people.

*Milton R. Henry,* for defendant Smyers.

*Gary W. Brasseur,* for defendant Trantham.

Before: BRONSON, P. J., and FITZGERALD and O'HARA,[*] JJ.

O'HARA, J. These are appeals[1] by the defendants-appellants from jury convictions of conspiring to break and enter occupied dwellings, MCLA 750.157a; MSA 28.354(1) and MCLA 750.110; MSA 28.305, and conspiring to receive and conceal stolen property worth more than $100, contrary to

---

[*] Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] While defendant Trantham is before us of right, defendant Smyers' appeal is by leave granted.

MCLA 750.157a, *supra,* and MCLA 750.535; MSA 28.803. The cases have been joined here for review.

There are ten assignments of error. The first three are presented by defendant Trantham. The latter seven are raised by defendant Smyers. We have examined them all with care. Those we do not discuss have not been overlooked, rather we consider them to have raised issues not preserved on appeal or to have been of insufficient substance to merit decisional discussion.

Defendant Trantham's first claim revolves around the information. He argues that because he stood mute at the arraignment he can initially raise on appeal the alleged misjoinder of offenses charged in the information. He asserts that although the examining magistrate found defendant was a coconspirator in a single conspiracy with two criminal objects (burglary and receiving or aiding in the concealment of stolen property), the prosecution proofs revealed the existence of two distinct conspiracies and these proofs, if believed, would only involve defendant Trantham as a participant in the latter conspiracy.

We believe that the examining magistrate upon due consideration of the entire evidence before him could properly grant the prosecutor's motion to permit the filing of an information alleging but a single conspiracy. In *People v Larco,* 331 Mich 420, 426–427 (1951), the Supreme Court approvingly cited the cogent language of Justice CHRISTIANCY in *People v McKinney,* 10 Mich 54, 95 (1862):

"As a general rule, in cases of felony, when it clearly appears, from the indictment or otherwise, that several entirely distinct felonies are intended to be charged and proved, the court will, in its discretion, either quash or

compel the prosecutor to elect; and the same course is sometimes taken in misdemeanors where several offenses in no way connected are charged. But there is nothing technical in the rule; and in the exercise of this discretion the court will not be governed simply by the question whether several different offenses in point of law are charged and intended to be proved; but mainly, as a general rule, by the consideration whether the trial of these several offenses would involve the proof of substantially different transactions, and thereby tend to confuse the defendant in his defense, or deprive him of any substantial right. And therefore where the several offenses charged, though distinct in point of law, yet spring out of substantially the same transaction, or are so connected in their facts as to make substantially parts of the same transaction, or connected series of facts, the defendant can not be prejudiced in his defense by the joinder, and the court will neither quash nor compel an election. Such would seem to be the principle of the general rule to be deduced from the cases." See also MCLA 767.75; MSA 28.1015.

Defendant Trantham next questions the propriety of the people's summation to the jury, the pertinent part of which reads: "Mr. Nelson [trial counsel for Trantham] indicated initially that he came into this case believing his client innocent and should be acquitted. I see nothing unusual with that approach because, on the other side, I suppose, you can say I came in with just as strong a· feeling that his client is guilty and should be convicted." Although the prosecutor did inform the jury of his own belief that defendant was guilty of the offenses charged it was in response to a defense argument and, furthermore, the prosecutor indicated immediately after this comment that he wanted the jury to decide the case on the evidence (which he proceeded to discuss). We also note the record is devoid of any showing of objection by

appellant's own trial counsel[2] with respect to the prosecutor's rebuttal argument and that counsel made no request for a curative instruction if he indeed considered the comment prejudicial to defendant. The record also shows that the trial court instructed the jury as to the function of counsel and specifically charged the trier of fact to disregard any expression by counsel with respect to their personal belief of defendant's guilt or innocence. The error, if any, necessarily was harmless. See *People v Fuston Thomas,* 36 Mich App 23 (1971); *People v Flatt,* 44 Mich App 452 (1973).

Finally, defendant Trantham claims he was denied the equal protection of the laws because he and two codefendants were the only parties named in the information who ultimately received prison terms (apparently the others pled guilty or entered pleas of nolo contendere to lesser offenses and did not receive prison sentences).

In *People v Sawicki,* 4 Mich App 467, 476–477 (1966), this Court rejected a similar contention:

"Appellants in their final question claim that the Federal constitutional requirement of equal protection was violated in this case by reason that, of the 4 alleged coperpetrators of the crime, two were convicted of robbery armed, the third was allowed to plead guilty to attempted robbery armed, and the fourth was not prosecuted at all.

"The case of *Oyler v Boles* (1962), 368 US 448 (82 S Ct 501, 7 L ed 2d 446) is determinative of this issue. Therein, petitioners, sentenced by a West Virginia court under the habitual criminal statute, claimed they had been denied equal protection of the laws under the Fourteenth Amendment of the Federal Constitution because the statute had only been applied to a small minority of those subject to its provisions. The United

---

[2] Only counsel for codefendant Ronald Rodgerson complained of the prosecutor's rebuttal argument and Rodgerson is not a party to the instant appeal.

States Supreme Court held that there was no infringement of the constitutional right because it was not alleged that in enforcing the statute West Virgina exercised a policy of selectivity based on an unjustifiable standard such as race, religion, or some other arbitrary classification.

"Similarly, because there is no such allegation in the instant case, the claimed denial of equal protection of the laws under the Fourteenth Amendment lacks merit. See, also, *Yick Wo v Hopkins* (1886), 118 US 356 (6 S Ct 1064, 30 L ed 220)."

In *People v McCormick,* 39 Mich App 616, 617–618 (1972), we cited with approval the language of Justice STEERE in *People v Mire,* 173 Mich 357, 363–364 (1912):

" 'The claim that this act is unconstitutional because it places a greater burden on one than upon another, does not give equal protection to all, and inflicts on one greater penalty than on another, is based upon the fact that there are several kindred acts in this State, prescribing a less severe punishment, which include, to a greater or less extent, elements of the offense created by the act under which respondent was convicted. As a consequence, it is said the Legislature so arranged these laws that the prosecuting attorney may at will choose the one under which he will proceed, and thus decide the penalty to be inflicted upon the accused, usurping in effect the power of the court to exercise its discretion in pronouncing sentence. The prosecuting attorney has been declared by this Court to be a *quasi*-judicial officer, and is vested with certain discretionary powers in the administration of criminal law.'

\* \* \*

"A prosecuting attorney by the very nature of his duties is required to exercise discretion."

Defendant Smyers initially asserts that his conspiracy conviction was impermissible as a matter of law based upon the facts adduced at the trial

below, and that the trial judge improperly denied his motion for a directed verdict of acquittal. The people assert these contentions are without merit based upon the proofs contained in the record.

Smyers took the witness stand at trial and testified he had participated in the conspiracy, including receipt and sale of stolen chattels derived in the course of the conspiracy; however, he claimed at all relevant times he had merely feigned complicity in the conspiracy in his real role as a bona fide FBI informant who reported all his dealings in the conspiracy to FBI agent Donald Thiel.

The people did not question that Smyers had on occasions prior to 1967 worked on various assignments for local police agencies. Nor did the people challenge the fact that defendant Smyers made certain limited disclosures to FBI agent Thiel with respect to the instant case. However, the state did introduce controverting testimony which sought to establish that defendant at no time during the course of the conspiracy charged herein ever acted as a bona fide police informant; rather, that he attempted to pretend being an FBI informant, while simultaneously acting on his own behalf as an active member of the burglary conspiracy with criminal intent for his own personal gain; and for the further purposes of attempting to immunize himself from subsequent criminal prosecution and to profit by belatedly turning in two of his coconspirators.

When defense counsel moved for a judgment of acquittal based upon the ground that Smyers was an informant during the period of time he had participated in the burglary conspiracy in 1967, the trial judge denied the motion on the basis that the jury would have to decide the factual issue as to defendant's claimed role in this drama and that

the degree of credibility to be given the testimony of defendant Smyers was for the jury to decide.

We are of the opinion that the trial judge accurately perceived the above issue as a question of fact as to which there were substantial contradictions and conflicts in the testimony. Thus, he properly submitted this material issue of fact to the jury under appropriate instructions relative to credibility of witnesses and the role of the jury with respect to findings of fact.

Defendant Smyers next urges various claims of instructional error to the jury on the part of the trial court, only one of which was raised below. That objection related to the trial court's proposed instruction on the question of defendant's informer role.

The trial court gave the following instruction with respect to defendant's "informer" defense:

"The guilt or innocence of each defendant must be decided as if he were being tried separately.

"Each defendant in this case is individually entitled to and must receive your determination whether or not he was a member of the alleged conspiracy, if any existed, and as to each defendant you must determine whether or not he was a conspirator as alleged by deciding whether or not he willfully, intentionally, and knowingly joined with any other or others in an agreement or understanding of the elements of the criminal conspiracy charged in this case.

"In conspiracy prosecutions it is often difficult for an individual defendant to make his own case stand on its own merits because of the variety and amount of evidence which is received against the other defendants and for often limited purposes.

"You, as jurors, are not privileged to assume that because the prosecutor has shown some kind of criminal concert to exist, that all of the defendants are automatically liable for everything that any one of the original participants in the conspiracy might have done,

or, for that matter, for what any one who later joins it might do. Thus before you can return a verdict of guilty against any defendant, you must find that he so agreed and combined with one or more named coconspirators to commit a series of breakings and enterings of occupied dwellings and to receive or conceal any stolen property deriving therefrom.

"In this regard, *a defendant who merely pretends to enter an agreement with persons named as coconspirators for the sole purpose of gathering information from the—for the law enforcement authorities, regarding the activities of those coconspirators, cannot be found to be a party to such a conspiracy as a matter of law, and it matters not what the other parties to the alleged conspiracy believe as to the intent of one feigning participation in a conspiracy.* One who, while acting as a police agent, enters into a purported conspiracy in the secret role of an informer for the authorities, cannot be found to be a coconspirator. In the within case it is the theory of the defendant Archie Smyers, and he contends and offers proof to support his theory that he did undertake to act as an undercover agent in relation to transactions had between himself and the coconspirators Fralick and Bolduc. He contends, moreover, that his actions were consonant with a prearranged plan with the FBI, put into effect for the purpose of cracking a burglary ring which had operated successfully within Genesee County for several months without apprehension. Under his theory, Archie Smyers claims that from his very first contact with the coconspirators Fralick and Bolduc, his undertaking—takings with them were feigned and not real. He claims that he did not intend to further their conspiracy or to aid them in their planning. But that, on the contrary, he intended to frustrate their execution and to, in fact, bring about the arrest and prosecution of those involved. He claims that while their end was to burglarize and to steal, his end was to gather information for the police.

"He claims that there was, therefore, never any meeting of his mind and will with those of any conspirators and that he was never joined with any common agreement or enterprise with any conspirator.

"It is the theory of the people that defendant Smyers

acted in a duo role in this matter, that is, that he was not only an informer for the police some of the time, but that he joined the conspiracy with criminal intent and for his own profit. The people contend that defendant Smyers sought to profit from his participation in the conspiracy in three ways:

"1, that as an informer he would immunize—I'm not reading that right—that as an informer, he would be immunized from arrest and prosecution;

"2, that as an active participant in the conspiracy he would profit from that portion of the moneys he kept for himself when stolen goods were sold;

"And, 3, that he would further profit from the money paid to him by law enforcement authorities on the occasions where he did, in fact, inform.

"The people contend that defendant Smyers actually participated in the unlawful conspiracy charged.

"*I charge you that if,* after having heard all of the proofs in the case regarding the defendant Smyers' activities with the police, that *he was feigning complicity and acting as an informer for the police throughout the period of his associations with any of the alleged conspirators, or if the people have not proved beyond a reasonable doubt and by substantial evidence that Archie Smyers was not feigning complicity in acting as an informer for the police throughout the period of his associations with any of the alleged conspirators, then, in either case, you must return a verdict in favor of Mr. Smyers of not guilty.*

"*On the other hand, I charge you that if Archie Smyers, with criminal intent, agreed with Jerry Bolduc or other conspirators to join the continuing conspiracy charged to achieve its criminal purposes and to profit by those purposes but gave information to the government for gain and with a hope of protecting himself from criminal prosecution, then you may find him guilty of the conspiracy.*

"*The question really concerns the presence or absence of criminal intent,* whether he was a government informer, secretly bent upon frustrating the conspiracy while feigning or pretending to be a coconspirator, or whether he was a willing party to an illegal venture for

gain who feigned being a government informer to avoid the consequences of his criminal activities with the persons he informed upon." (Emphasis supplied.)

We find no error in the objected to instruction. It adequately states the contentions of the respective parties and sets forth the controlling law so that the trier of fact had adequate standards to guide its deliberations.

Defendant now raises a search and seizure issue which requires that we sketch, however briefly, some of the circumstances which underlay issuance of the search warrant. He asserts that a certain cocktail dress found in defendant Smyers' home and introduced into evidence was seized pursuant to a constitutionally defective warrant and thus should have been suppressed in accordance with defense counsel's belated motion at trial.[3]

The affiant in connection with the search warrant, a coconspirator and prosecution witness, testified that he had given defendant Smyers a stolen white cocktail dress for his wife as a Christmas present in December, 1967. This witness further related that on March 1, 1968, he had been a guest in the Smyers' home and had been informed by Mrs. Smyers that she personally was wearing the dress and that it was in "the closet". In substance, these were the facts stated as a justification for issuance of the warrant six days later on March 7, 1968.

Defendant Smyers argues that since there was a *six*-day hiatus between the date of the issuance of the warrant and the date of the affiant's visit to

---

[3] While it is a well-established rule that the illegality of the seizure of evidence must be raised by a motion to suppress in advance of trial, the trial judge in his discretion allowed defendant to raise the issue at trial and ultimately denied the motion to suppress.

his home, the dress should have been held inadmissible at trial because the supporting affidavit facts were too "stale" or "remote". We disagree. It is clear that the test of remoteness is a flexible and reasonable one depending on the facts and circumstances of the particular case in question. 2 Gillespie, Michigan Criminal Law § Procedure (2d ed), § 868, pp 1129–1130. Unlike *People v Siemieniec,* 368 Mich 405 (1962), and *People v Wright,* 367 Mich 611 (1962), cited by defendant Smyers, the affidavit in the case at bar contains sufficient facts stated within the personal knowledge of the affiant to justify the magistrate's finding of probable cause to believe that the stolen cocktail dress stated to be in defendant's abode on March 1, 1968, continued to be present at that place and personally used by Mrs. Smyers for the reasonably foreseeable future. Thus, the warrant properly issued and the trial court did not commit error when it admitted the dress into evidence over defense counsel's objections during trial.

The defendant also asserts that the prosecutor made several improper statements to the jury in his rebuttal closing argument. Defendant failed to interpose an objection to these claimed prejudicial arguments at trial. In such a circumstance we adhere to the established rule that remarks by the prosecutor in closing argument will not be considered on appeal in the absence of a timely objection by defendant at trial. Only where cautionary instructions would not have cured the resultant prejudice from those comments will we review the matter on appeal. *People v Humphreys,* 24 Mich App 411 (1970).

The remarks of the prosecutor complained of by defendant Smyers were primarily in response to matters previously raised by defense counsel or

were fair comment on the testimony contained in the record. The record also reveals that defense counsel affirmatively invited the prosecutor to answer certain questions which, he, defense counsel, had propounded to the jury.

Defendant Smyers finally contends that the admission into evidence at trial of a certain stolen adding machine taken from defendant, in his home, pursuant to a valid search warrant, after the conspiracy was over, which the prosecution alluded to during closing rebuttal argument, constituted reversible error.

The defendant's claim is without legal merit. The evidence was relevant rebuttal to defendant's claim that all his actions were to conceal his role as a bona fide FBI informant. Smyers testified he only concealed and sold stolen property which he told agent Thiel about. Admission of this evidence was a matter of discretion on the collateral issue of credibility and no abuse of discretion is shown. *People v Charles O Williams,* 386 Mich 565 (1972).

We find no reversible error in the claims of either defendant. The judgments of conviction in both cases are affirmed.

All concurred.