## PEOPLE v ELAMAN

1. SEARCHES AND SEIZURES—WITHOUT WARRANT—AUTOMOBILES—
   FRUITS OF THE CRIME—PROBABLE CAUSE

   There was probable cause to believe that a defendant's automobile contained fruits of a crime of robbery where the police had solid evidence connecting the defendant with the robbery, and where the fact that that automobile was parked at the location where defendant was apprehended and that a jacket worn at the robbery was in plain view inside the car indicated that defendant had used the vehicle since the robbery; therefore, arresting officers were justified in dispensing with the normal warrant requirement in searching the glove box of the automobile for a stolen wallet.

2. CRIMINAL LAW—CLOSING ARGUMENT—PROSECUTOR'S REMARKS—
   FAIR TRIAL—VOUCHING FOR WITNESS.

   A prosecutor by his closing argument did not prejudice a defendant's right to a fair trial when he allegedly vouched for the truthfulness of a key witness where no objection was made to the remarks at trial, the prosecutor did not unequivocally vouch for the truthfulness of the witness, and where it appears that the prosecutor was responding to his opposition counsel's argument.

3. CRIMINAL LAW—SENTENCING—PRIOR CONVICTIONS—RIGHT TO
   COUNSEL—APPEAL AND ERROR.

   The Court of Appeals will not entertain a defendant's allegations that consideration by a sentencing court of the defendant's prior conviction was a violation of the defendant's constitutional rights necessitating resentencing where the defendant claimed he was not represented by counsel at the prior conviction and where the defendant had not first established in a

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Arrest §§ 26, 28.
[2] 53 Am Jur, Trial § 637.
   21 Am Jur 2d, Criminal Law § 118.
[3] 21 Am Jur 2d, Criminal Law § 585.

separate post-conviction action that his prior conviction was constitutionally infirm.

Appeal from Berrien, Karl F. Zick, J. Submitted Division 3 November 9, 1973, at Grand Rapids. (Docket No. 13153.) Decided January 14, 1974.

Roscoe Elaman was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Ronald J. Taylor,* Prosecuting Attorney, and *John A. Smietanka,* Chief Assistant Prosecuting Attorney, for the people.

*Judith K. Munger,* Assistant State Appellate Defender, for defendant.

Before: R. B. BURNS, P. J., and DANHOF and O'HARA,* JJ.

DANHOF, J. On August 19, 1971, defendant was convicted by a jury of armed robbery. MCLA 750.529; MSA 28.797. He was sentenced on October 7, 1971 to a term of 15 to 40 years in prison. Appellate counsel was thereafter appointed, and a motion was made to this Court to remand the cause to the trial court for further proceedings. On May 9, 1972 that motion was granted. After an evidentiary hearing, the trial court found that defendant's arrest was legal and that certain evidence admitted at trial was not the product of an illegal search. The trial court declined to consider defendant's claim that a constitutionally invalid conviction was relied upon in determining sentence. Defendant appeals. We affirm.

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

On the night of March 13, 1971 Ronald Eagon
and John Clark, the arresting officers, responding
to a report of an armed robbery, arrived at the
Milner Hotel in Benton Harbor. They spoke to the
victim who related to them that he had been
robbed of his wallet while a sharp object was held
to his neck. While he could not identify the perpe-
trators, he nevertheless knew that more than one
individual was involved. The officers then talked to
the desk clerk and learned that two men had
entered the victim's room and had left a short
time later on the run. The clerk described with
particularity the type of jacket that one of the
men had been wearing. The officers interviewed a
friend of the victim who put the officers in contact
with two women who had been in the victim's
company earlier in the evening. One of the women
told the officers that she had been in the hotel
room that evening, but left shortly before the
robbery with the key; that she thereafter met the
defendant who secured the key from her. The
defendant was identified by name. Information
was also obtained as to the type of automobile that
defendant drove and that he frequented with some
regularity the Lions Bar. After verifying with the
desk clerk that the victim and one of the women
had been registered in the hotel room as man and
wife, the officers proceeded to the Lions Bar. An
automobile in the parking lot matched the descrip-
tion of defendant's car. A radio check resulted in
confirmation that the vehicle was registered to
defendant. A jacket fitting the description given by
the desk clerk was in plain view on the rear seat.
The officers entered the bar and questioned the
bartender who pointed out the defendant. After
defendant produced identification upon request, he
was placed under arrest. He was taken outside and

searched. The search produced a pocket knife and the key to the victim's room. The officers then entered defendant's automobile, seized defendant's jacket from the rear seat and the stolen wallet from the glove box. Defendant's accomplice was arrested later on the morning of March 14.

I

It is clear under these facts that the officers had reasonable cause to believe that a felony had been committed and that defendant had committed it. Defendant's arrest without a warrant was therefore lawful. The knife and the hotel key found on defendant's person at the time of his arrest were the product of a lawful search incident to arrest. The jacket taken from the backseat of defendant's automobile was evidence in plain view, and therefore lawfully seized. *Harris v United States,* 390 US 234; 88 S Ct 992; 19 L Ed 2d 1067 (1968). *People v Tisi,* 384 Mich 214; 180 NW2d 801 (1970).

That probable cause existed for the search of the glove box of defendant's auto cannot be argued. At the time of the search, the police had solid evidence connecting defendant with the robbery: the descriptions of defendant, the key to the victim's room, information as to the manner in which defendant came into possession of the key, and defendant's jacket. The fact that the automobile was parked at the location where defendant was apprehended and that the jacket was inside indicated that defendant had used the vehicle since the robbery. The only major item missing was the stolen wallet. In this situation, it was reasonable to believe that the wallet might be in the vehicle.

Having determined that there was probable cause to believe that the automobile contained fruits of the crime, we hold that the arresting

officers were justified in dispensing with the normal warrant requirement before searching the glove box. The mobility factor that obtains with automobiles plus the existence of probable cause was held to justify a warrantless search in *Carroll v United States,* 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925). The *Carroll* rationale has more recently been extended to include station house searches of automobiles. *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

Defendant argues that the *Carroll-Chambers* rationale is inapplicable because his automobile was parked and unoccupied; that under *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971), the police should have obtained a warrant before searching. We disagree. *Coolidge* held that the "automobile exception" to the warrant requirement is not absolute, but rather depends upon the existence of certain exigent circumstances. In distinguishing *Carroll,* the Court in *Coolidge* observed as follows:

"And surely there is nothing in this case to invoke the meaning and purpose of the rule of *Carroll v United States*—no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it is not practicable to secure a warrant,' *Carroll, supra,* at 153 [45 S Ct at 285; 69 L Ed at 551; 39 ALR at 800], and the 'automobile exception,' despite its label, is simply irrelevant." (403 US at 462; 91 S Ct at 2035–36; 29 L Ed 2d at 580.)

In the case at bar and unlike *Coolidge,* defendant was arrested at a time closely proximate to the original suspicions of wrongdoing. The arresting

officers knew of the existence of an accomplice who had not yet been apprehended. Defendant's automobile was parked in the lot of a business establishment, and not in his private driveway. Finally there was good reason to believe that goods stolen earlier that evening were inside the automobile.

## II

Defendant next argues that the closing argument of the prosecutor prejudiced defendant's right to a fair trial by allegedly vouching for the truthfulness of a key witness. No objection was made to the remarks at trial, nor in our opinion did the prosecutor unequivocally vouch for the truthfulness of the key witness:

"Now, I'm not going to stand up here before you and tell you that Billy Heflin is one of our most outstanding citizens in this community. I would be a fool to tell you that. Of course, you wouldn't believe it. I'm not going to stand here and tell you that; I don't think you will believe it, and I don't believe it myself. I don't think he's a real good citizen, and I don't think he is a particularly good person, as a matter of fact; but I don't consider myself a baboon either, and I don't believe anyone else working at the prosecutor's office is without any intelligence whatever.

"Now, you heard the testimony of Mr. Heflin. Mr. Globensky is trying to tell you that Mr. Heflin really put one over on the prosecutor's office and has made monkeys out of us. I submit that might have been the case had we not other evidence, with the exception of the testimony of Billy Heflin."

Reading the entire summations of both counsel, it appears that the prosecutor was responding to his opposition counsel's argument. *People v Smyers,* 47 Mich App 61; 209 NW2d 281 (1973).

## III

Defendant claims that consideration by the sentencing court of a prior conviction was a violation of his constitutional rights necessitating resentencing because defendant was not represented by counsel at that prior conviction. *United States v Tucker,* 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972). This precise issue was decided contrary to defendant's position in *People v Gavin,* 50 Mich App 743; 213 NW2d 758 (1973). Defendant must first establish in a separate post-conviction action that his prior conviction is constitutionally infirm.

Affirmed.

All concurred.