PEOPLE v DUPUIE

Opinion of the Court

1. Criminal Law—Constitutional Law—Equal Protection—Sentences.

Equal protection does not demand equal sentences for different defendants committing the same crime, providing the different sentence or treatment is not based upon some arbitrary classification such as race or religion.

2. Criminal Law—Witnesses—Promises of Leniency—Instructions to Jury.

A jury must be apprised of the fact that testimony against a defendant was secured by promises of leniency.

3. Criminal Law—Witnesses—Promises of Leniency—Instructions to Jury—Evidence.

A defendant was not entitled to a new trial on the ground that witnesses against him were promised leniency by the prosecutor in exchange for their testimony without the jury being apprised of the deal, and that the existence of the deal was borne out by the fact that the witnesses were later granted new trials which resulted in reduced sentences, where the fact that the motions for new trial were made by the witnesses more than two years after their testimony was given militates against a finding that there was a deal made by the prosecutor to secure the testimony.

4. Criminal Law—Witnesses—Accomplices—Credibility—Instructions to Jury—Preserving Question.

A defendant is entitled to an instruction as to the caution with which an accomplice's testimony should be viewed, but there is no need for the trial court to give such an instruction *sua sponte,* and defendant's failure to request such an instruction

References for Points in Headnotes
[1] 21 Am Jur 2d, Criminal Law § 581.
[2–5] 53 Am Jur, Trial §§ 781, 786.
[4] 53 Am Jur, Trial § 824.

precludes his raising such failure as error on appeal (GCR 1963, 516.2).

DISSENT BY T. M. BURNS, J.

5. CRIMINAL LAW—WITNESSES—PROMISES OF LENIENCY—INSTRUCTION TO JURY—EVIDENCE.

*There was a sufficient showing of a deal between a prosecutor and witnesses against a defendant involving promises of leniency to reverse the defendant's conviction because the jury was not apprised that the testimony was secured by promises of leniency where the witnesses were granted new trials which resulted in reduced sentences; a two-year delay in resentencing the witnesses was not inconsistent with defendant's theory where the witnesses were originally sentenced to life imprisonment and the sentences were reduced to 7-1/2 years, because the delay of two years certainly did not prejudice them.*

Appeal from Recorder's Court of Detroit, Samuel H. Olsen, J. Submitted Division 1 November 13, 1973, at Detroit. (Docket No. 13883.) Decided April 26, 1974.

Dennis D. Dupuie was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Raymond L. Miller,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and T. M. BURNS and VAN VALKENBURG,* JJ.

VAN VALKENBURG, J. Defendant was found

_____

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

guilty by a jury on April 11, 1969, of the felony of robbery armed, MCLA 750.529; MSA 28.797, was sentenced to a prison term of from 10 to 20 years on May 16, 1969, and appeals on leave granted.

On December 1, 1967, a certain Detroit bar was held up by Andrew Goeppner and John Carl, III. Goeppner and Carl were found guilty in a joint nonjury trial and were sentenced to life imprisonment. Their convictions were affirmed by this Court. See 20 Mich App 425; 174 NW2d 143 (1969). Subsequent to that trial Carl implicated defendant. Both Carl and Goeppner testified at defendant's trial to the effect that defendant herein planned the robbery, furnished the information as to where the money was kept within the bar, supplied the gun, and divided the proceeds; but that defendant remained in the automobile outside the bar during the perpetration of the robbery. Defendant took the stand and testified that while he knew Goeppner and Carl, he took no part in the robbery.

Somewhat more than two years after defendant's conviction, Goeppner and Carl moved for new trials before the trial court. Their motions were granted. They thereafter pled guilty to armed robbery and were sentenced to 7-1/2 to 15 years.

On appeal defendant argues that he was denied due process and equal protection of the laws by reason of the fact that he received a harsher sentence than Goeppner and Carl received upon retrial. Defendant further argues that he did not receive a fair trial since the jury should have been informed of the deal made with Goeppner and Carl to secure their testimony and the jury should have been instructed as to the caution with which an accomplice's testimony should be viewed.

Defendant's argument with respect to equal protection of the laws is not. well founded. Equal protection does not demand equal sentences, providing the different sentence or treatment was not based upon some arbitrary classification such as race or religion. See *People v Sawicki,* 4 Mich App 467; 145 NW2d 236 (1966), and *People v Smyers,* 47 Mich App 61; 209 NW2d 281 (1973).

There is no question that if Goeppner's and Carl's testimony was secured by promises of leniency, the jury must be apprised of that fact. See *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972); *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972). The question thus becomes whether there was, in fact, some deal made by the prosecutor to secure the testimony.

It should be noted that the question of whether a deal had been made was explored and argued at trial. Both the witnesses and the prosecutor denied that there was any deal made. Defendant, however, points to the fact that the witnesses were later granted new trials which resulted in reduced sentences. Had the temporal relationship between the giving of the testimony and the granting of the new trials been closer, we would be inclined to remand the matter to the trial court for a hearing to determine whether a deal had been made at the time of defendant's trial. Here the very fact that the motions for new trial were made more than two years after the testimony was given militates against a finding that there was any deal made by the prosecutor to secure the testimony. The fact that the trial court may have taken the witnesses' cooperation into consideration in granting the new trial would not affect the fairness of defendant's trial, providing there was no hidden promise of leniency made to secure the witnesses' testimony.

Upon this record we find that there is not a sufficient showing of any deal to justify further inquiry.

While defendant was probably entitled to an instruction as to the caution with which an accomplice's testimony should be viewed, there is no need for the trial court to give such an instruction *sua sponte.* Defendant's failure to request such an instruction precludes his raising such failure as error on appeal. GCR 1963, 516.2; see also *People v Love,* 43 Mich App 608; 204 NW2d 714 (1972).

The remainder of defendant's allegations of error are of no merit. The question of the failure of the prosecutor to endorse and produce an alleged res gestae witness is not properly before this Court, since defendant failed to preserve the question by a motion to endorse before the trial court. Likewise the question of whether the verdict was against the great weight of the evidence was not preserved, since no motion for a new trial was made below.

Affirmed.

V. J. BRENNAN, P. J., concurred.

T. M. BURNS, J. *(dissenting).* I cannot agree with the majority decision that there was not a sufficient showing of any deal upon the record to justify further inquiry.

The majority concedes that "if Goeppner's and Carl's testimony was secured by promises of leniency, the jury must be apprised of that fact". See *Giglio v United States,* 405 US 150; 92 S Ct 763; 31 L Ed 2d 104 (1972); *People v Nettles,* 41 Mich App 215; 199 NW2d 845 (1972). However the majority concludes that the length of time between the date the testimony was given and the date the motions for new trial were made militated against a finding that there was any deal made by the prosecutor to secure the testimony.

I do not believe that the period of time between the date the testimony was given and the date the motions for new trial were made is dispositive of the question of the existence of a deal. The delay in resentencing is not inconsistent with defendant's theory. Goeppner and Carl were originally sentenced to life imprisonment. If there in fact was a deal whereby they would have their sentences reduced to a minimum of 7-1/2 years, the delay of 2 years certainly did not prejudice them. These witnesses would not be harmed by the delay in bringing the actions for a new trial until the expiration of the aforementioned 7-1/2 years.

After carefully reviewing the record in this case, I am convinced that in spite of the denials by Goeppner and Carl, a deal in fact had existed. Defendant's counsel did not have sufficient information at his disposal to prove the existence of a deal, and while he was able to hint that such a deal existed when cross-examining these witnesses, he could not conclusively prove its existence.

Whether the prosecution merely failed to obtain this evidence rather than actively suppressed evidence already in hand is of no consequence here. *People v Jordan,* 23 Mich App 375, 388; 178 NW2d 659 (1970). The fact remains that the existence of a deal was effectively suppressed from the jury. This information would have been of immeasurable benefit to the jury in determining Goeppner and Carl's credibility where credibility was such an important issue as in the instant case. The defendant did not receive a fair trial. Consequently, he is entitled to a new trial where once the question of the existence of a deal has been raised, the prosecution should be required to show by clear and convincing evidence that no such deal existed.

I vote to reverse and remand for a new trial.