PEOPLE v MAYBEE

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—PRESERVING QUESTION.

The general rule is that where defendant neither makes a request for a cautionary instruction concerning the credibility of accomplice testimony nor makes any objection to the jury charge as given, the issue is waived and cannot be raised for the first time upon appeal, unless it appears that a manifest injustice has occurred because of the failure of the trial judge to give such a cautionary instruction *sua sponte*.

2. CRIMINAL LAW—WITNESSES—ACCOMPLICES—CAUTIONARY INSTRUCTION—MANIFEST INJUSTICE.

Failure to give a cautionary instruction *sua sponte* regarding the testimony of defendant's accomplice, whose credibility as a witness in his own behalf was impeached by the prosecutor to such an extent that the trial judge, sitting without the jury, did not believe the accomplice's exculpatory testimony and found him guilty of second-degree murder, resulted in a manifest injustice to defendant, who was being tried by the jury for the same homicide, where the prosecutor also presented the accomplice as a prosecution witness and elicited from him his exculpatory story so that the jury would believe that defendant had fatally stabbed the victim without showing or attempting to show to the jury the conflicts and inconsistencies in the codefendant's testimony and thus the prosecutor was able to manipulate the accomplice's testimony to obtain convictions of both defendants.

CONCURRENCE BY V. J. BRENNAN, J.

3. CRIMINAL LAW—EFFECTIVE ASSISTANCE OF COUNSEL.

*A failure of defendant's counsel to call to the stand a detective witness who could impeach a co-defendant accomplice's testi-*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 53 Am Jur, Trial § 618.
[3] 53 Am Jur, Trial § 695.

*mony which implicated defendant in a homicide could not
conceivably have been based on trial tactics, and when the
effect of such failure was to deprive the jury of all available
facts on which to form an opinion of the credibility of the
accomplice and a trial judge's* sua sponte *instructions on the
accomplice's credibility could not have cured or ameliorated the
manifest injustice to the defendant, there was a mistake of
defense counsel which was of such proportions that it may have
been decisive in the conviction and a new trial should be
granted. (People v Degraffenreid, 19 Mich App 702 [1969]).*

Appeal from Oakland, Frederick C. Ziem, J.
Submitted Division 2 April 15, 1972, at Lansing.
(Docket No. 8980.) Decided January 16, 1973.
Leave to appeal denied, 389 Mich 791.

James Maybee was convicted of manslaughter.
Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, and *William G. Wolfram,* Assistant Prosecuting Attorney, for the people.

*Charles J. Porter,* for defendant on appeal.

Before: QUINN, P. J., and V. J. BRENNAN and
TARGONSKI,* JJ.

TARGONSKI, J. Two questions confront us in this
appeal from a jury conviction of manslaughter in
violation of MCLA 750.321; MSA 28.553. The first
issue is the question of whether the trial court
committed reversible error in failing to give, *sua
sponte,* a cautionary jury instruction concerning
the credibility of accomplice testimony. The second
is whether the trial court committed reversible
error under the facts of this case in permitting a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

codefendant, being tried without a jury and whose statements were shown to be inconsistent, to testify in the jury trial of defendant after the codefendant had testified on his own behalf in the absence of the jury.

One Lorenz Baltz died March 15, 1969 as a result of stab wounds inflicted that date in the men's room of Bob & Ken's Bar in Pontiac, Michigan. There was adequate testimony by customers and an employee of the bar to place the defendant James Maybee as well as his codefendant Richard Henry in the area of the men's room of the bar at the approximate time of the stabbing. Testimony also indicated that the murder weapon, a hunting knife, belonged to the codefendant Henry. They both departed from the bar shortly after the wounded man exited from the bar. Henry was heard to say, "We better get out of here." and Maybee responded, "I don't have to get out of here, I didn't do nothing *[sic]*".

Codefendant Henry was arrested on the evening of the altercation indicated above, while this defendant was not arrested until March 17, 1969, at which time he was allegedly walking towards the Pontiac police station for the purpose of surrendering himself. Henry's pants which he wore at the time of the arrest and a gold-colored jacket which was retrieved later from the rear of a bar located approximately one block from the place in which the incident took place, and papers in his wallet, all had human bloodstains of Type O on them which was the same type of blood as the victim's. Chemical tests performed on the clothing worn by defendant Maybee on the night of March 15, 1969, showed no bloodstains. Chemical tests performed on the hunting knife which was found on the floor of Bob & Ken's Bar revealed that the stains were of human blood origin and Type O.

Defendant Maybee was tried in a joint trial with codefendant Henry. The former was tried by a jury while his codefendant elected to waive and be tried by the court.

At trial, Detective Sergeant Orville Johnston of the Pontiac Police Department testified in the absence of the jury with regard to inconsistent statements made by codefendant Henry after his arrest. Such inconsistent statements related to bloodstains on his clothing, the location of the gold bloodstained coat and the location of the hunting knife both before and after the incident in question.

When the prosecution had rested, counsel for codefendant Henry called him to the stand. Defendant Maybee's counsel then requested that the jury be removed and objected to the testimony of codefendant Henry being presented in front of the jury. The trial court ruled that his testimony would be heard in the absence of the jury without prejudice to the right of the plaintiff to reopen proofs and to endorse Henry as a witness against defendant Maybee. Henry then testified on his own behalf in the absence of the jury. His testimony placed the entire blame for the stabbing death of Mr. Baltz on the defendant Maybee. The prosecutor in the absence of the jury conducted a cross-examination of Henry in which he established many inconsistencies in his testimony and conflicting statements with reference to many of the details of the events of the evening in question.

Then, knowing full well the conflicting statements and inconsistencies in Henry's testimony, the prosecutor moved to reopen proofs and called him as a witness for the prosecution in defendant Maybee's jury trial. This defendant's trial counsel objected but the court ruled that since Henry had

taken the stand in his own defense he had waived his privilege against self-incrimination.

In the presence of the jury Henry reiterated his prior statements that he was free from blame and that defendant Maybee was responsible for the stabbing death of the deceased. Here the prosecutor studiously avoided any reference to any inconsistencies or conflicts in Henry's testimony. Defendant Maybee's trial counsel, however, did his best to bring out by cross-examination all of the inconsistencies of Henry's testimony as it conflicted with prior testimony of other witnesses. It is important to note, however, that the effectiveness of this cross-examination was largely diminished because the jury had not heard the testimony of Detective Sergeant Johnston who testified in the absence of the jury and whose testimony particularly weakened the credibility of Henry.

Defendant Maybee's case was submitted to the jury on instructions permitting a finding of guilty of second-degree murder or manslaughter. These instructions did not include a cautionary instruction on accomplice testimony. However, defendant Maybee did not request such an instruction nor was there any objection to its omission. The trial court did, however, charge the jury to weigh the credibility of each witness. Subsequent to sentencing, the defendant filed a motion for new trial based upon an affidavit of codefendant Henry that he had committed perjury in his testimony that defendant Maybee had stabbed Mr. Baltz.

I. *Did the trial court commit reversible error in failing to give* sua sponte *a cautionary jury instruction concerning the credibility of accomplice testimony?*

The general rule is that where the defendant

neither makes a request for a jury instruction nor makes any objection to the jury charge as given, this issue is waived and cannot be raised for the first time upon appeal unless a manifest injustice has occurred. *People v Duerson,* 35 Mich App 223 (1971); *People v Edwards,* 35 Mich App 233 (1971); *People v Ely,* 35 Mich App 390 (1971); *People v Timmons,* 34 Mich App 643 (1971); *People v Lewis,* 26 Mich App 290 (1970); GCR 1963, 516.2; MCLA 769.26, MSA 28.1096; MCLA 768.29, MSA 28.1052.

This Court in *People v Billings,* 19 Mich App 348 (1969), specifically held that failure to instruct the jury to weigh the testimony of the defendant's accomplice with caution was not error. *Billings, supra,* cited with approval *People v Sawicki,* 4 Mich App 467 (1966), and *People v Zesk,* 309 Mich 129, 132 (1944). *Zesk, supra,* is similar to the instant case in that the accomplice there also had manifested prior statements contrary to his testimony at trial. A cautionary instruction as to accomplice testimony was not given. In holding that this did not constitute error the Court quoted the following from 1 Gillespie, Michigan Criminal Law & Procedure, § 379:

"The credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and it is well settled that a jury may convict on such testimony alone, and it is not error for the court to refuse to charge that it is not safe to convict a defendant, on the uncorroborated testimony of an accomplice."

This passage now appears in 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 488, p 600. It has gained judicial acceptance through *Billings* and *Sawicki, supra,* as the applicable rule with regard to cautionary jury instructions on accomplice testimony.

This was a joint trial. What was said in *People v Liggett,* 378 Mich 706, 714 (1967), is particularly applicable:

"Whenever defendants are jointly tried, it is of utmost importance that the rights of each defendant be carefully protected by the trial judge."

It is the defendant's position that this passage requires the trial judge to give a cautionary instruction regarding the testimony of the accomplice Henry. The judge gave ample instructions on credibility of a witness and the weight and value to be given to a witness's testimony even though he did not go into the specific issue of warning instructions on the dangers of accomplice testimony.

Further, in this case there was other testimony which tended to implicate defendant Maybee in the crime. Also, in *United States v Finazzo,* 288 F2d 175 (CA 6, 1961), *cert den,* 368 US 837; 82 S Ct 37; 7 L Ed 2d 38 (1961), the Court said:

"There are numerous cases stating that it is the better practice for the trial judge to caution the jury against reliance upon the testimony of an accomplice and against giving credence to such testimony in the absence of corroborating evidence. However, it is also well settled that failure of the trial judge to so instruct the jury is not reversible error."

See also *United States v George,* 319 F2d 77 (CA 6, 1963).

It is quite clear, according to the case law, that the trial judge did not commit error in failing, *sua sponte,* to give a cautionary instruction on accomplice testimony where none was requested and there was no objection to the jury charge. An inquiry must now be made, however, to see if a

manifest injustice has occurred. If the defendant has been denied a fair and impartial trial, then his argument will be heard for the first time on appeal. This question is examined in the context of the second issue.

II. *Did the trial court commit reversible error under the facts in this case in permitting a codefendant being tried without a jury and whose statements were shown to be inconsistent to testify in the jury trial of defendant Maybee after the codefendant had testified on his own behalf in the absence of the jury?*

The defendant made timely objection to the trial court's ruling that permitted codefendant Henry to testify as a witness for the prosecution in the presence of the jury. He also raises a constitutional issue of denial of due process when he claims that the prosecutor knowingly elicited false testimony from such codefendant. These questions were properly preserved for appellate review.

The plaintiff is clearly correct that an accomplice may testify in the trial of a codefendant. *People v Ockaski,* 234 Mich 95, 97 (1926), states that "[a]n accomplice is a competent witness on behalf of the prosecution". See also *People v Burbridge,* 23 Mich App 33 (1970), MCLA 600.2158; MSA 27A.2158.

The troublesome issue in this case is whether the trial court in allowing Henry to testify, and the plaintiff in calling him as a witness, may have denied defendant Maybee due process of law. It is clear that the plaintiff knew of the many inconsistencies in Henry's testimony. The prosecutor elicited many of these conflicting statements in his cross-examination of Henry in the absence of the jury. Then, fully aware of the contrary positions

he had taken, the prosecutor still called Henry as a witness against defendant Maybee in the presence of the jury. On direct examination, he drew out Henry's version of the event without attempting to show the inconsistencies in his testimony. These were ultimately brought to light on cross-examination by defendant's trial counsel.

The defendant contends that the rule applicable to the facts of this case was expressed as follows in *Napue v Illinois,* 360 US 264, 269–270; 79 S Ct 1173, 1177; 3 L Ed 2d 1217, 1221 (1959):

"[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment (citations omitted). The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears. (Citations omitted.)

"The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend. As stated by the New York Court of Appeals in a case very similar to this one, *People v Savvides,* 1 NY2d 554, 557; 154 NYS2d 885, 887; 136 NE2d 853, 854–855 [1956].

" 'It is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendant's guilt. A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth. * * * That the district attorney's silence was not the result of guile or a desire to prejudice matters little, for

its impact was the same, preventing, as it did, a trial that could in any real sense be termed fair.' "

At first blush, the *Napue* case seems to be distinguishable from the instant situation. In that case, the prosecutor elicited false testimony, knowing it to be false, and let it go uncorrected. Here, at least, there is a question as to the knowledge of the plaintiff as to the truth or falsity of Henry's testimony. At the very least, the prosecutor knew at the time that there was a question as to the truth of the testimony if he did not have specific knowledge of its falsity.

The inconsistencies in Henry's testimony were brought out in cross-examination. The plaintiff in his final argument to the jury advised the jury to examine these inconsistencies.

The first substantial evidence that Henry's testimony was false came after the trial. We take special note of the court's commentary in making disposition of the motion for a new trial and its attitude towards the recanting affidavit on which such motion for a new trial was based, coupled with Henry's testimony on the stand in connection with the hearing on the motion for a new trial. The court said specifically, "this court thought [some of those points] were untrue at the time", referring to the testimony of Henry at the original trial.

The prosecutor was well aware of the inconsistencies in codefendant Henry's testimony after he testified in the absence of the jury. First, he impeaches the credibility of Henry's version of the events on cross-examination without the jury present. This was done so well that the trial judge did not believe codefendant Henry's exculpatory testimony and found him guilty of second-degree murder. The prosecutor then presented codefendant

Henry as a witness for the prosecution in the jury trial of defendant Maybee. In the presence of the jury he drew out codefendant Henry's exculpatory story so that the jury would believe that defendant Maybee stabbed the victim. Under the circumstances of this case it is apparent that a manifest injustice has occurred and that defendant has been denied a fair and impartial trial.

While it was proper for the trial court to permit the codefendant to be endorsed as a witness for the prosecution after the prosecution had rested, it certainly was error in view of our previous discussion as to manifest injustice to fail to give a cautionary instruction on such testimony even though such instruction was not requested and no objection was made to the instructions as given.

In a joint trial where one defendant is being tried before the court and the other before the jury, utmost caution must be taken to protect the rights of each defendant. This was not done in the present case for the prosecutor was effectively able to manipulate the testimony of codefendant Henry to obtain convictions of both defendants. These circumstances indicate that defendant Maybee has been denied a fair and impartial trial.

Reversed and remanded.

Quinn, P. J., concurred.

V. J. Brennan, J. *(concurring)*. I agree with the majority that the defendant's conviction should be reversed and the case remanded to the court below for a new trial. However, I reach that conclusion by a different route. Their position may be summarized as follows: First, the defendant's argument that the trial court erred by not *sua sponte* giving an instruction on the credibility of an accomplice was not preserved below; second, a manifest injus-

tice occurred at trial in that (1) the jury did not hear a police officer's testimony regarding codefendant Henry's prior statements to police and (2) the prosecutor managed to achieve the best of both worlds by first destroying the codefendant's testimony on cross-examination during his defense and second by presenting that same testimony when his case in chief was reopened; third, the majority concludes that on this basis the court should have given the requested instruction.

I disagree with that rationale. To hold that the trial court should have, *sua sponte,* given an instruction on an accomplice's credibility is, in effect, a holding that such a charge could have cured or at least ameliorated the manifest injustice. With such a holding, I cannot agree. The injustice herein is that the jury, which had to make an evaluation of the credibility of the codefendant, did not have all of the known and available facts on which to form an opinion of his credibility. We can conceive of no reason based on trial tactics for defendant's counsel's failure to call detective Johnston to the stand so that he could impeach Henry's testimony before the jury. Given the close nature of the case against this defendant, a new trial at which this error is not repeated could well produce a different result. *People v Degraffenreid,* 19 Mich App 702 (1969).