PEOPLE v MANUEL JOHNSON

1. CRIMINAL LAW—LINEUPS—PHOTOGRAPHS—IDENTIFICATION—RIGHT
   TO COUNSEL.
   Photographs of an accused person may not ordinarily be dis-
   played to witnesses if defendant is known to be in custody or
   can be readily produced for a lineup, and if such photographic
   showing is had, the accused is entitled to an opportunity to
   request and obtain counsel.

2. CRIMINAL LAW—APPEAL AND ERROR—IDENTIFICATION—PHOTO-
   GRAPHS—INDEPENDENT SOURCE—INABILITY TO IDENTIFY.
   Remand for the purpose of determining whether an identification
   of a defendant by the complainant has a source independent of
   an impermissible photographic showing is not necessary where
   the complaining witness was unable to identify the defendant
   from the photos, and any subsequent identification by the
   complainant would necessarily have to have been independent
   of such showing.

3. CRIMINAL LAW—IDENTIFICATION—WITNESSES—PRETRIAL OBSERVA-
   TION—SUGGESTIVE OBSERVATIONS—TOTALITY OF CIRCUMSTANCES
   —DUE PROCESS.
   Observations of the defendant by the complaining witness at
   pretrial proceedings, which aid the complainant in her in-court
   identification and which may have been suggestive, will not
   constitute reversible error where under the totality of the
   circumstances the nature of the pretrial observations were not
   so impermissibly suggestive as to constitute denial of due
   process.

4. CRIMINAL LAW—INSTRUCTIONS TO JURY—IDENTIFICATION—ACCOM-
   PLICES—SUA SPONTE INSTRUCTIONS—FAILURE TO OBJECT—PRE-
   SERVING QUESTION.
   There is no need for a court to give an instruction on identifica-

---

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 21 Am Jur 2d, Criminal Law §§ 368, 369.
   29 Am Jur 2d, Evidence § 371 *et seq.*
   Admissibility of evidence of lineup identification as affected by
   allegedly suggestive lineup procedures. 39 ALR2d 487.
[5] 75 Am Jur 2d, Trial § 575.
[6] 29 Am Jur 2d, Evidence § 638 *et seq.*

tion or on an accomplice's testimony *sua sponte* and therefore failure to request or timely object to an instruction on identification or on an accomplice's testimony is fatal to an objection on appeal.

5. Criminal Law—Instruction to Jury—General Features—Defining Offense—Essential Ingredients—Absence of Request—Eyewitness Testimony.

A judge should instruct a jury in criminal cases as to general features of the case, define the offense and indicate that which it is essential to prove to establish the offense, even in the absence of request, but jury instruction on eyewitness testimony does not fall within that mandate.

6. Criminal Law—Constitutional Law—Self-Incrimination—Conflicting Testimony—Right to Silence—Exercise of Right—Waiver.

A defendant's constitutional privilege against compulsory self-incrimination is not impinged upon when the prosecution stresses a conflict between the testimony of the defendant at trial and what he allegedly stated or failed to state in his statements to police, where defendant had not exercised his right to remain silent.

Appeal from Jackson, Gordon W. Britten, J. Submitted Division 2 November 12, 1974, at Lansing. (Docket No. 18104.) Decided February 10, 1975.

Manuel Lee Johnson was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*Roger L. Wotila,* Assistant State Appellate Defender, for defendant.

Before: Bronson, P. J., and D. E. Holbrook and V. J. Brennan, JJ.

D. E. HOLBROOK, J. On May 19, 1973, Manuel Lee Johnson, defendant, was convicted by jury of armed robbery, contrary to MCLA 750.529; MSA 28.797, and was sentenced to prison for 7 to 20 years. He appeals as of right.

On the evening of November 14, 1972, at approximately 7:30, a black male, identified by Irene Zawacki, complainant at trial, as the defendant, entered Zawacki's Party Store in Jackson, Michigan and purchased a package of cigarettes. Mrs. Zawacki was tending the store at the time. The defendant had his left hand in his pocket and it appeared to be bulged. As defendant left he looked over the whole store. The complainant was apprehensive and called her husband on the phone; and he said he would come right down. The defendant returned to the store a few minutes later, entered and walked towards the complainant, at which time he pulled a nylon stocking from underneath his stocking cap to hide his face, which complainant said she had already seen about 10 to 15 minutes before. When defendant entered the store the second time, the complainant pressed the panic button (call for the police). Defendant came up to complainant and said: "[T]his is a hold-up. I want your money." At the time the complainant said she observed inside his jacket either a zipped pocket or a cut pocket and a gun protruding from it. The handle of the gun had a diamond criss-cross in it. Mrs. Zawacki gave the defendant the bills in the cash register at which time he said: "I want it all." She pulled the drawer out as far as she could and said: "That is all. * * * What about the change?" The defendant said: "I want the change too." Mrs. Zawacki, after trying twice, pulled out the quarters and put them on the counter. Defendant grabbed them and ran out of the store. There was approximately $150 taken. Only Mrs. Zawacki

and the defendant were in the store at the time of the robbery.

Shortly thereafter the defendant was arrested near the scene of the crime, while driving a blue Chevrolet Impala automobile with personal initials on the side, fitting the description of the automobile used by the robber. He was searched and had on his person $79.15, including nine $1 bills, seven $5 bills, three $10 bills, and a bunch of quarters. Detective Stiles Brown took a statement from the defendant on November 15, 1972. The trial court conducted a *Walker*[1] hearing and determined that the statement given by defendant to Officer Brown was voluntary, that the warning given to defendant satisfied *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966), and that defendant waived his rights thereunder. Officer Brown testified that defendant told him that he committed the robbery and that he had an accomplice, but declined to name the accomplice. The account of defendant as to what happened that night accorded with Mrs. Zawacki's testimony at trial. He said the gun he used was thrown from the car into the Grand River. Two witnesses for the prosecution testified that about 7:30 on the night in question they observed an automobile similar to the one defendant was driving parked crossways with its motor running in a lot neighboring the party store. One testified he saw a black man sitting inside the car at the time, and moments later observed the car pulling away with two people inside. The defendant presented the defense of alibi. Although admitting he was in the store about 6 p.m., he testified he did not return and was at his brother-in-law's at the time of the

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

claimed robbery. His brother-in-law and nephew testified, mainly supporting the testimony of the defendant. Defendant denied his alleged confession to Officer Brown and disputed the account of his statement to Detective Lowe, as Detective Lowe had reported it.

### Ia

Defendant asserts error in the police submitting pictures including defendant's for identification purposes to the complaining witness without counsel for the defendant being present.

Defendant cites the case of *People v Anderson,* 389 Mich 155, 168–169; 205 NW2d 461, 466–467 (1973), as authority for defendant's position that photographs of an accused person may not ordinarily be displayed to witnesses, if defendant is known to be in custody or can be readily produced for a lineup, and, if such a photographic showing is had, the accused is entitled to an opportunity to request and obtain counsel. The defendant in this case was known to be in custody and could have been readily produced for a lineup. If there were no other facts, we would be compelled to remand for the purpose of determining whether the complainant's identification of the defendant has an independent source. However, as is stated in *People v Jackson,* 391 Mich 323, 341; 217 NW2d 22, 29 (1974), before such a remand is necessary, there must be a showing that there had been photographic identification by the witness or witnesses. In the instant case, Mrs. Zawacki testified she could not recall the photographic showing; and the police officer who testified he had showed Mrs. Zawacki the pictures of several persons, including defendant, said she did not identify any of the pictures as belonging to defendant. Without an

identification being made of defendant at the photographic showing, any subsequent identification of defendant by the complainant would necessarily have to be independent of such showing. The testimony in the case shows that the complainant had ample time and took particular care to observe the defendant on the two occasions when he was in her store on the night in question. We find no reversible error as to this issue.

Ib

Defendant claims that the observation of defendant by complainant at three scheduled preliminary examination proceedings constituted a one-on-one confrontation so impermissibly suggestive as to render the admission of complainant's in-court identification a denial of due process of law.

The defendant was present for a preliminary examination on three occasions: the first time he requested counsel; the second time his counsel desired adjournment for time to prepare the case; the third time the defendant waived preliminary examination. At each time Mrs. Zawacki was required to be present in order to testify. There is no question but that she observed defendant while in attendance at court at these times. There is a discrepancy as to how long she may have observed the defendant on each of these occasions. Defendant was in a holding room at the rear of the courtroom out of sight of the complainant a good share of the time.

Defendant bases his claim of reversible error in this regard on the case of *People v Solomon,* 391 Mich 767; 214 NW2d 60 (1974), adopting Chief Judge T. J. LESINSKI's dissent in 47 Mich App 208, 216; 209 NW2d 257, 260 (1973). It is well to ob-

serve the holdings per Chief Judge LESINSKI's opinion as follows:

1. A preliminary examination is a pretrial confrontation within the meaning of *Stovall v Denno,* 388 US 293; 87 S Ct 1967; 18 L Ed 2d 1199 (1967);

2. In ascertaining whether a confrontation is impermissibly suggestive a court must look to the "totality of circumstance" in the particular case;

3. Particularly important factors include (a) the time between the criminal act and the confrontation, and (b) the length of time that the complainant-eyewitness is with the defendant during the offense;

4. Factors peculiar to the *Solomon* case are: (a) allegation of police suggestions that defendant was the offender; (b) a 2-1/2 year duration between the confrontation and the robbery; (c) the identification of defendant at the preliminary examination was the only identification made by complainant; and (d) the preliminary examination was held in the judge's chambers.

5. The rule of the *Solomon* dissent is narrow; it does not establish the principle that all confrontations at preliminary examinations are impermissibly suggestive.

In the instant case, there was no allegation of any police suggestions. The length of time between the robbery and the in-court indentification was six months. There was no identification of defendant at the preliminary examination, since he waived examination. The proceedings, while they lasted, took place in the courtroom, and defendant was placed in a holding room at the rear of the court. The complainant had ample time to observe defendant just prior to and during the robbery.

The following colloquy took place between complainant and the defense counsel at trial:

"*Q.* But, your identification was aided by the fact that you saw him in the lower court, is that correct?

"*A.* In person. True.

"*Q.* In person. Right. And, that was always without the benefit of anybody else in the same close proximity, which was Mr. Johnson's same size, weight, build, that sort of thing, is that true?

"*A.* True."

The complainant also testified that she observed the defendant at the slated preliminary examinations only "[w]hen he was visible and in my sight". Moreover, the defendant testified that complainant saw him while he was in the holding room at the proceedings. "[S]he did come by and she glanced in the window and looked right at me."

The above testimony shows: (1) that the complainant did not continually observe the defendant for a total of six to nine hours as the defendant now suggests; (2) that the observations at the pretrial proceedings did in fact aid the complainant in her in-court identification; and (3) the one-on-one nature of the observations may have been suggestive.

At trial defense counsel *inter alia* moved the complainant's testimony be striken on the grounds they were dependent upon the "lower court" (pretrial) observations. The trial court ruled that "[t]here is sufficient evidence before the court, separate and apart from her visual contact with the defendant at the lower court examination, so that there is no taint to the extent that her testimony is inadmissible in full, because it is not reliable". Although the complainant did admit on cross-examination that the observations aided her in-court identification, this is not to say that but for the observation she would not have been able to identify the defendant at trial. On the contrary,

the two separate occasions—just prior to and during the robbery—that complainant observed the defendant are significant. Under the totality of circumstances the nature of the pretrial in-court observations were not so impermissibly suggestive as to constitute a denial of due process by admitting the complainant's identification testimony at trial.

We rule that the trial court's ruling was not clearly erroneous.

## II

Did the trial court commit reversible error in failing *sua sponte* to give a cautionary instruction on identification testimony?

The defendant asserts that in adhering to the spirit of *People v Anderson,* 389 Mich 155; 205 NW2d 461 (1973), an instruction to the jury is required on the inherent unreliability of eyewitness identification. Further, defendant asserts that this Court should by analogy apply a requirement that the judge instruct *sua sponte* regarding testimony of an accomplice.

Defendant did not at trial request either instruction nor did he object to the failure of the trial judge to give such instruction. As a general rule a failure to request an instruction or to object to the failure to give an instruction precludes defendant from raising the issue on appeal. MCLA 768.29; MSA 28.1052; GCR 1963, 516.2; *People v Maybee,* 44 Mich App 268, 272–273; 205 NW2d 244, 247 (1973), and cases cited therein. We must now determine if there is an exception to this rule with respect to cautionary instructions on identification testimony. In the cases of *People v McIntosh,* 6 Mich App 62, 69; 148 NW2d 220, 223 (1967), and

*People v Floyd,* 15 Mich App 284; 166 NW2d 506 (1968), this Court ruled that a failure to request or timely object to an instruction on identification is fatal to an objection on appeal. We rule that the defendant's claim that the trial court should have *sua sponte* instructed the jury on an accomplice's testimony is untenable, because our Court in the case of *People v Dupuie,* 52 Mich App 510, 514; 217 NW2d 902, 904 (1974), concluded:

"While defendant was probably entitled to an instruction as to the caution with which an accomplice's testimony should be viewed, there is no need for the trial court to give such an instruction *sua sponte.* Defendant's failure to request such an instruction precludes his raising such failure as error on appeal."

Defendant further asserts that we recognize that an instruction on identification testimony is included in the "essential ingredient" category and is required under the case of *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784, 788 (1967), wherein it is stated:

"It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request."

*Liggett* indicates certain matters including the elements of the crime, the burden of proof, and the general features of the case come under the "essential ingredient" category. We conclude that eyewitness testimony does not fall within the *Liggett* mandate.

### III

Was the defendant's constitutional privilege

against compulsory self-incrimination impinged when the prosecutor elicited testimony from a prosecution witness, questioned defendant on cross-examination and commented in his closing argument on a conflict between the testimony of defendant at trial and what he had allegedly stated or failed to state in his statements to the police?

Defendant refers to his statement as testified to by Detective Lowe:

> *"Q. (by Mr. Grant, assistant prosecuting attorney):* I see. What if anything did he tell you?
>
> *"A.* He said that he was not on Cooper Street, knew nothing about an armed robbery. Said that he had come in possession of the car that he was arrested in about 7:30 in the evening. I asked him to account for the money that was found in his possession, and he could not. He said he was not employed.
>
> *"Q.* He gave you no answer where that money may have come from or how it came into his possession?
>
> *"A.* No sir, he did not."

Parenthetically, contrary to defendant's indications that trial counsel objected to the above testimony because it violated defendant's right to remain silent, trial counsel voiced an objection only after the testimony of Lowe was complete. The objection, made out of the presence of the jury, concerned the alleged failure of the prosecutor to give trial counsel notice that the exculpatory statements of defendant to the police officer would be introduced. The trial court overruled the objection, and the issue is not raised on appeal. On cross-examination defendant testified in part as follows:

> *"Q. (Mr. Grant):* Did he ask you where the money had come from the $79 and some cents?
>
> *"A.* Yeah.

"*Q.* What did you tell him?
"*A.* Like I told him I earned it.
"*Q.* Did you tell him how?
"*A.* He didn't ask me how."

The prosecutor made the following comments as to the conflicting testimony:

"Detective Lowe testified that he asked Mr. Johnson about this money on the night of December 14th or November 14th, 1972. Mr. Johnson could not account for it, when he got the money. But, yesterday, almost six months later, when he took the stand, Mr. Johnson knew exactly where he had come up with this $79. Detective Lowe said he couldn't tell him on the night of the 14th. There is another situation where somebody is not telling the truth—either Detective Lowe is getting on the stand and lying under oath that this is what Mr. Johnson told him or Mr. Johnson is being less than truthful with us, or over the period of six months now he remembers where he got the money on the night of the 14th, that was found in his possession.

\* \* \*

"Mr. Johnson's explanation of where that money came from. Mr. Johnson took the stand. He didn't tell us why that night he didn't tell the detective that it was his brother-in-law that gave him the money."

It appears from Detective Lowe's account of the statement that defendant did not indicate in any manner that he was exercising his right to remain silent, but rather an inability to come up with an explanation during an ongoing conversation with the detective. This accords with the fact that defendant did not object to the statement at trial on the now-asserted grounds.

Under these circumstances we are constrained to rule that defendant did not exercise his right to remain silent, and thus, the testimony as admitted and the closing argument of the prosecutor were proper.

Affirmed.